UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

KEET MILLER                                                                                          PLAINTIFF
ADC #158736

V.                                      No. 2:20-CV-191-BSM-JTR

DEXTER PAYNE, Director,
Arkansas Department of Correction;
CHRISTOPHER BUDNIK, Warden,
ADC, Delta Regional Unit; ERICA
WRIGHT, Lieutenant, ADC, Delta
Regional Unit; CHRISTIE SIMPSON,
Sergeant, ADC, Delta Regional Unit;
JACQUELINE LOVE-CRAFT, Former
Sergeant, ADC, Delta Regional Unit;
and ANDRE JOHNSON, Sergeant,
ADC, Delta Regional Unit                                                                         DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Miller may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction

On September 30, 2020, Plaintiff Keet Miller ("Miller") filed a *pro se* § 1983 Complaint alleging that multiple Arkansas Division of Correction ("ADC") officials violated his constitutional rights. *Doc. 2*. Only Miller's excessive force claim against Defendant Erica Wright ("Wright") remains pending. *Docs. 49, 55*.[1] According to Miller, Wright tased him in the stomach while he was restrained "for the very purpose to cause him harm, not to maintain and restore control . . . ." *Doc. 2 at 4*.

Wright filed a Motion for Summary Judgment on the merits of Miller's claims. *Doc. 84*. Miller filed a competing Motion for Summary Judgment. *Doc. 89*. Wright has responded. *Docs. 93, 94*.

For the reasons set out below, the Court recommends that Wright's Motion (*Doc. 84*) be GRANTED and that Miller's Motion (*Doc. 89*) be DENIED.

## II. Standard

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986);

---

[1] On July 14, 2021, the Court granted Miller's request to voluntarily dismiss Defendants Dexter Payne and Christopher Budnik. *Doc. 49*. On March 18, 2022, United States District Judge Brian S. Miller dismissed Plaintiff's claims against Defendants Christie Simpson, Jacqueline Love-Craft, and Andre Jordan without prejudice for failure to exhaust administrative remedies. *Doc. 55*.

*Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

### III.  Discussion

Miller sued Wright in her official capacity seeking damages only. Wright correctly argues that Plaintiff's official capacity claims are barred by the Eleventh Amendment. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Burk v. Beene*, 948 F.2d 489, 492–93 (8th Cir. 1991). Accordingly, summary judgment in Wright's favor on Miller's official capacity claims is appropriate.

Miller also sued Wright in her personal capacity. Those claims fall under the Eighth Amendment. "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (internal citation omitted). The core judicial inquiry in an excessive force claim is whether the force was used in a "good-faith effort to maintain or restore discipline, or was instead used maliciously and sadistically to cause harm." *Flemons v. Devane*, 779 Fed. Appx. 423, 425 (8th Cir. 2019) (per curiam) (*citing Wilkins v. Gaddy*, 559 U.S. 34, 36-39 (2010)). This inquiry "turns on the circumstances of the individual case

or the particular 'prison setting.'" *Johnson v. Blaukat*, 453 F.3d 1108, 1113 (8th Cir. 2006). In making this inquiry, courts consider: "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of the injury inflicted . . . ." *Jackson*, 866 F.3d at 974.  Pain inflicted during a prison security measure is not cruel and unusual punishment only because in hindsight the degree of force used for security purposes was unreasonable. *Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) (*quoting Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

***

The following facts are undisputed.  *Docs. 85-1, 91, 58*.[2]  Miller was in custody at the Delta Regional Unit of the Arkansas Division of Correction on March 18, 2020.  At approximately 10:14 that evening, a team of officers was conducting roster count in Barracks 2, Zone 2.  Sergeant Love-Craft loudly directed all inmates to go to their assigned beds for roster count.  Miller, who was standing between the dayroom and restroom, heard the announcement but did not go to his bed.  Instead, Miller yelled and cursed at staff.  For example, he told Sergeant Love-Craft "Ain't

---

[2] Wright filed a Statement of Undisputed Material Facts in support of her Motion for Summary Judgment. *Doc. 85-1*. Despite specific instruction from the Court that he must say whether he agrees or disagrees with each of Wright's factual statements (*Doc. 87*), Miller did not do so.  Miller did file a Statement of Undisputed Facts in support of his Motion for Summary Judgment. *Doc. 91*.  With the exception of contesting the medical record of his visit to the health services office after he was tased, Miller does not disagree with any other aspect of Wright's factual statement.  *Id.*  As such, with the exception of the contested medical records, Wright's statement of facts is deemed admitted.  FED. R. CIV. P. 56(e)(2).

nobody scared of your dumb a**! Get out of here!" Sergeant Love-Craft repeated her order for Miller to go to his assigned bed. But Miller refused, again using combative language.

Sergeant Love-Craft then radioed for assistance. Sergeant Jordan responded to the call and found Miller inside of Barracks 2 upset and cursing at staff. Sergeant Jordan ordered Miller to submit to restraints, but Miller refused and walked away. With Sergeant Jordan trailing behind him, Miller walked upstairs and put on a pair of pants. When Sergeant Jordan repeated his order for Miller to submit to restraints, Miller complied.

At this point, Sergeant Simpson arrived to help escort Miller out of the Barracks. Wright arrived shortly after Sergeant Simpson. As Sergeants Jordan and Simpson began escorting Miller out of the Barracks, Miller became hostile to Wright telling her that he would "whoop [her] a**." When they exited the Barracks and were walking down the hall of Zone 2, Wright directed Miller to keep walking. In response, Miller verbally threatened Wright with the likes of "I'll beat you're a**" and other similar statements. At the same time, Miller was moving closer to Wright, who told Miller to turn back around and keep walking. Miller, though, continued moving aggressively towards Wright. With her Taser pointed at Miller, Wright again told Miller to stop. Miller did not stop. Wright then deployed her taser and

5

struck Miller near his abdomen. Afterwards, Miller complied and allowed staff to escort him towards the infirmary.

\*\*\*

Wright maintains that her use of force was not excessive, and that even if it was, qualified immunity bars Miller's claims. *Doc. 86*. Wright points out that Miller received a disciplinary for his actions on May 18, 2020. *Doc. 85-1 at ¶ 24*; *Doc. 84-1*; *Doc. 86 at 7*. But that fact is not determinative of Miller's excessive force claim—an officer's actions may constitute excessive force even when the force was used to restore order. And Wright's argument that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Miller's excessive force claim misses the mark. A finding of excessive force would not call into question the validity of the disciplinary conviction.

Miller argues that Wright did not use force in a good faith effort to restore discipline because Miller was already in restraints when she tased him. *Doc. 90*. A person in restraints, however, may still present a threat. *See Franklin v. Franklin Cnty., Arkansas*, 956 F.3d 1060, 1062–63 (8th Cir. 2020). That Miller was restrained, then, does not necessarily mean that Wright's use of force was excessive.

Video submitted by Wright in support of her Motion sheds light on the May 18, 2020 incident. *Doc. 84-7*. Plaintiff has not contested the footage. As such, the Court may view the facts as depicted in the video. *Scott v. Harris*, 550 U.S. 372,

6

378-79 (2007). The video is consistent with the undisputed facts and provides additional context regarding the incident.

The video shows Plaintiff exiting the Barracks and being escorted down a hall by two officers. *Doc. 84-7 at 9:19:59*. There are other officers and inmates in the hallway. *Id. at 9:20:04*. After Plaintiff began walking down the hall, he pivoted to look behind him. *Id. at 9:20:06*. Afterwards, he turned a full 180 degrees to face Wright, who was some distance in the back. *Id. at 9:20:10*. Miller then distances himself from his escorts and approaches Wright. *Id. at 9:20:12*. Only after Miller began to approach Wright did she raise her taser and eventually use it against Miller.

There is no sound with the video. But Miller acknowledged that he was not following Wright's orders to continue walking. *Doc. 84-9 at 29:8-29:14*. Wright is smaller than Miller, who stands 5'10" or 5'11" and at the time weighed 235 to 240 pounds. *Doc. 84-9 at 26:2-26:20*. And although other officers were nearby, Miller was close enough to Wright to kick her or spit on her. *Id. at 26:21-27:1*. Miller also admitted he was "talking crazy and calling [Miller] names." *Id. at 26:24-27:1*. Further, several unrestrained inmates were standing in the hallway just feet away. *Doc. 84-7 at 9:20:10*.

This was not an instance of Miller passively resisting or an example of the day-to-day policing of a prison though means of violence. *See Hickey v. Reeder*, 12

F.3d 754, 758–59 (8th Cir. 1993). Miller's actions toward Wright were deliberate and appeared hostile.

Wright provided the record of Miller's visit to the health services office after he was tased. *Doc. 84-12*. Miller contests the medical records. *Doc. 91 at ¶¶ 4, 5*. He claims that he suffered nerve damage as a result of the taser and is in pain "to this very day." *Doc. 90 at 2*. But Miller provided no medical evidence of nerve damage to support that allegation. And he did not contest the photograph taken of his injury. *Doc. 84-7*. The photograph reveals a very small cut in the area of Miller's solar plexus. While there is no significant injury threshold for an excessive force claim, "[t]he extent of injury may . . . provide some indication of the amount of force applied." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). The photograph reveals only a minor injury.

Under these circumstances, no reasonable jury could find that Wright's use of her taser was malicious and sadistic. Moreover, even if there was a violation, Wright is entitled to qualified immunity—Plaintiff did not provide clearly established law according to which Wright should have known her actions were unlawful, and the Court is not of aware of any such precedent. *Robbins v. City of Des Moines*, 984 F.3d 673, 678 (8th Cir. 2021); *Watson v. Boyd*, 2 F.4th 1106, 1112 (8th Cir. 2021).

8

## IV. Conclusion

Where, as here, Wright moved for summary judgment, Plaintiff "was required 'to discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" *Fatemi v. White*, 775 F.3d 1022, 1046 (8th Cir. 2015) (internal citation omitted). Plaintiff has not, however, met proof with proof to establish facts in dispute that would preclude summary judgment in Wright's favor. *Wilson v. Miller*, 821 F.3d 963, 970 (8th Cir. 2016). Accordingly, summary judgment should be entered in Wright's favor. Because summary judgment in Wright's favor is appropriate, Miller's Motion for Summary Judgment should be denied.

IT IS THEREFORE RECOMMENDED THAT:

1. Wright's Motion for Summary Judgment (*Doc. 84*) be GRANTED.

2. Miller's Motion for Summary Judgment (*Doc. 89*) be DENIED.

3. Miller's excessive force claim against Wright be DISMISSED with prejudice.

4. Judgment be entered accordingly.[3]

DATED this 1st day of September, 2023.

_____
UNITED STATES MAGISTRATE JUDGE

---

[3] All of Miller's other claims were previously dismissed without prejudice. *Doc. 55*.